IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 17, 2007

## RODNEY R. RYE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 40400647      Michael R. Jones, Judge**

—————————

**No. M2006-02668-CCA-R3-PC - Filed November 30, 2007**

—————————

The petitioner, Rodney R. Rye, filed a petition for post-conviction relief from his convictions for two counts of child rape, a Class A felony, and one count of aggravated sexual battery, a Class B felony, and his resulting effective twenty-two-year sentence. He contends that he entered guilty pleas that were unknowing and involuntary and that he received the ineffective assistance of counsel. The trial court denied relief, and we affirm that judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Kathryn B. Stamey, Clarksville, Tennessee, for the appellant, Rodney R. Rye.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and C. Daniel Brollier, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner's convictions relate to multiple acts of sexual abuse toward his minor stepdaughter over the course of several years. Pursuant to a settlement with the state, the petitioner received concurrent sentences of twenty-two years for the two child rape convictions and ten years for the sexual battery conviction.

At the post-conviction hearing, the petitioner testified that he was arrested on October 13, 2003, while he was in the Tennessee Mental Christian Hospital. He said he had been there for eight days and had been diagnosed with chronic depression and adjustment disorder. He said that he was taking Paxil at the hospital and was receiving counseling but that he did not receive his medication or counseling after he was arrested. He said fifteen months passed between his arrest and his guilty pleas. He said he also had been hospitalized in 2001 and 1989 for his depression. The petitioner said

that his trial counsel was aware that he was being hospitalized when he was arrested and that counsel had received his medical records.

The petitioner testified that he also suffered a string of family problems during the fifteen months he was in jail awaiting trial. These included his mother battling cancer, his father being sent to a nursing home, his receiving divorce papers, and his son having chronic headaches. He said that he blamed himself for these problems and that they contributed to his severe depression. He said he explained the problems to his trial counsel. He also described his mental state during this time of incarceration as "[e]xtremely confused, depressed, [and] disoriented." He said he suffered from anxiety and panic attacks, although he said he did not inform his counsel of the panic attacks.

The petitioner testified that he initially rejected a settlement offer because he felt he was "too confused to make a right decision on it." He also did not think he was able to assist in his defense because his "spirit was broken" and because he "had no cause or reason to care to fight for it, to defend [himself]." He said that until the time of his guilty pleas, he changed his mind several times regarding whether to plead guilty. He wrote letters to counsel informing counsel of his changing decisions. He said that he changed his mind several times even on the day he entered his guilty pleas and that the court had to take a break during the hearing in order for him to decide what to do. He said that after speaking with his counsel, he decided to enter the guilty pleas, but he said he did not understand what was happening at the plea hearing and did not really understand the consequences of his decision to plead guilty. He said he did not know how receiving treatment or being evaluated would have affected his decision to plead, but he felt that he should have at least been evaluated. He said he felt he was "mentally incapacitated" at the time of his pleas. He said that if the post-conviction court granted him a new trial, he would go to trial and not plead guilty.

On cross-examination, the petitioner testified that he was not on any medications at the post-conviction hearing and was not on medications at the guilty plea hearing. He acknowledged that he wrote letters in which he admitted molesting the victim. He acknowledged making a confession to the Department of Children Services, the Department of Human Services, and investigators. He said he admitted the molestation to his brother and to his wife. He acknowledged that he repeatedly told his trial counsel that he did not want a jury trial, but he said he also told counsel many times that he did want a jury trial. He said he did not like the state's offer and that he accepted the offer very reluctantly on the day of the plea hearing. He said, however, that he did so because he was being pressured and could not make a rational choice on his own. He said he knew he could have gone to trial the day of his pleas but felt that he could not defend himself. He acknowledged that one of the reasons he did not want the case to go to trial was because he did not want the victim to have to testify. He said he thought pleading guilty and accepting the state's offer was the wrong decision.

Upon questioning by the court, the petitioner testified that he did not know what witnesses were present in court to testify the day of the scheduled trial and that he did not recall that the victim was prepared to testify. The specific things he thought trial counsel should have done included working with him more, explaining things to him better, and explaining the elements of the crime. He said he felt that his trial counsel did not represent him to the best of counsel's ability and gave up on trying to help him. He said counsel had his medical records and should have known that he needed to be mentally evaluated.

The petitioner's trial counsel testified that he had handled tens of thousands of criminal cases during his career, including about 300 jury trials. He said the defendant's case involved multiple confessions and incriminating statements that the defendant made to various people, including investigators with the Department of Children's Services and the Sheriff's Department. He said that none of these statements seemed to be the product of coercion and that the petitioner continued to incriminate himself even after counsel warned him against it.

Counsel testified that he had a great deal of contact with the petitioner before the date of trial. He said he tried to convince the petitioner to take an early fifteen-year settlement offer because, as there were multiple counts of child rape, he was likely to receive a much greater sentence if the case went to trial or if he entered an open plea. He said he explained the elements of child rape to the victim and explained that digital penetration of the victim, which the petitioner's confessions clearly indicated occurred, was considered child rape. Counsel said petitioner's statements were not clear on whether penile penetration occurred. He said the petitioner wrote letters to him indicating that the victim consented to the sexual conduct. He advised the petitioner that consent was irrelevant under the law and that it was a "catastrophic position" to argue that a seven-year old child was a willing participant in such conduct.

Counsel testified that although the petitioner was one of the most indecisive people he had ever known, he was never concerned about the petitioner's mental competency. He said the petitioner "articulated an understanding of the process." He was aware that the petitioner was being hospitalized at the time of his arrest and that the petitioner had been hospitalized for his depression in the past. He said he personally obtained records from the petitioner's hospitalizations. He said the petitioner's depression at the time of his arrest seemed to have been caused by two factors: his awareness of impending incarceration and his remorse over his acts toward the victim. He said the petitioner's prior instances of hospitalization also appeared to have been for "situational depression" relating to his molestation of others. He said he considered whether to have a mental evaluation of the petitioner performed but ultimately decided against it because the petitioner's medical records indicated that his previous hospitalizations were caused by his depression over his inability to prevent himself from committing acts of molestation. He said the records of his previous hospitalizations "all but labeled him a pedophile," and he did not want the state to obtain this information through reciprocal discovery. He acknowledged that the petitioner had asked him about having a mental evaluation and that they had discussed the issue, but he said he decided it was not in the petitioner's best interest.

Counsel testified that he visited the petitioner in jail the night before the day set for trial. He said he went to discuss trial preparation but that the petitioner told him the petitioner did not want the case to proceed to trial. Counsel said this was partly due to the petitioner's wish that the victim not have to testify. He said the petitioner did not want a trial but also did not want to accept the state's plea offer and did not want to enter an open plea. He said the petitioner never liked any of the choices available to him, but on the day set for trial, the petitioner accepted a twenty-two-year plea offer from the state.

On cross-examination, counsel testified that he was aware that the petitioner was having some family problems but that the petitioner never wrote letters to him mentioning the petitioner's

parents' medical problems. He said that although the petitioner made bad choices against his advice, including writing confessional letters to the trial court and others, he would not characterize the petitioner as being unable to defend himself. He said the petitioner changed his mind often, but he did not think the petitioner's mental state changed. He said the petitioner was typical of other child sex offenders in that he was remorseful and depressed about having to be incarcerated.

After reviewing the proof presented at the post-conviction hearing, as well as the transcript of the guilty plea hearing, the court found that the petitioner "did not like the offered sentence, but he made a voluntary and intelligent decision under very unpleasant circumstances." The court denied post-conviction relief. The petitioner appeals this judgment, contending both that his guilty pleas were unknowing and involuntary and that he received the ineffective assistance of counsel.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

## I.

The petitioner contends that his guilty pleas were "involuntarily entered without understanding of the nature and consequences of the plea." He argues that his mental capacity was diminished at the time of his pleas as a result of his depression and that he was pressured into entering the pleas. The state contends that the record supports the trial court's finding that the pleas were knowingly and voluntarily made.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). The circumstances include

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

<u>Blankenship v. State</u>, 858 S.W.2d 897, 904 (Tenn. 1993) (citing <u>Caudill v. Jago</u>, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." <u>Id.</u>

We agree with the state that the record supports the trial court's finding that the petitioner's guilty pleas were voluntarily and intelligently made. The evidence shows that although the petitioner changed his mind frequently regarding what he wanted to do and that he was not happy with the plea offer he ultimately accepted, he was aware of the consequences of pleading guilty and knew he had the choice not to plead guilty. At the plea hearing, the trial court initially refused to accept the petitioner's guilty pleas on account of the petitioner's equivocation on his answer of whether he wanted to accept the plea offer. The petitioner's statements to the court reflect that he did not want to serve a twenty-two-year sentence but that, more so, he did not want the case to proceed to trial. The trial court ultimately accepted the petitioner's pleas after the following colloquy occurred:

| | |
|---|---|
| The Court: | Let's get the jury. That's the only thing I know to do. Mr. Rye, pleas have to be voluntary. No one is going to to - - |
| [Petitioner]: | Now wait a minute, I am not saying that I want to take this to trial. |
| The Court: | What are you saying, Mr. Rye? |
| [Petitioner]: | I will take the twenty-two years. I understand. If I have to do it, I have to do it. |
| The Court: | No, sir, you do not have to do it. |
| [Petitioner]: | I am not saying I have to take the offer. If I take the offer, I know I got to do twenty-two years. |
| The Court: | Do you understand that? |
| [Petitioner]: | Yes, sir. |
| The Court: | Have you considered all of the alternatives that you have . . . |
| [Petitioner]: | Other than putting her up on that stand - - I don't want her to have to do that and tell all that. It is not worth it to me. |

(WHEREUPON, Counsel and [petitioner] confer briefly.)

| | |
|---|---|
| The Court: | Mr. Rye, what do you want to do this morning? Do you want a trial or enter into this plea? |
| [Petitioner]: | I am entering the plea, sir. |

Thus, the record indicates that rather than being pressured and coerced into entering the pleas, the petitioner made a voluntary and intelligent decision to plead guilty in light of the options that were available to him.

Furthermore, although the petitioner argues that his mental capacity was diminished at the time he entered his pleas, he offered no proof of this aside from his own testimony. The trial court accredited trial counsel's testimony that the petitioner's depression appeared to be situational and that there was no indication that the petitioner was incompetent. The record does not preponderate against those findings. The petitioner's guilty pleas were not involuntary and unknowing.

## II.

Regarding petitioner's claim of ineffective assistance of counsel, we note that under the Sixth Amendment to the United States Constitution, when such a claim is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to a general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. When a petitioner claims that the ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove prejudice by showing that but for counsel's errors, the petitioner would not have entered the plea and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). Failure to satisfy either the deficiency or prejudice prong results in the denial of relief. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

The petitioner argues that his trial counsel was ineffective in failing to investigate his level of competence. The trial court found that counsel made a tactical decision not to seek a mental evaluation for the petitioner and that there was no indication that the petitioner was incompetent. The record supports these findings. Counsel's testimony was that he did not seek a mental evaluation of the petitioner because he did not have reason to question the petitioner's competency and because he feared raising the issue of the petitioner's mental health would alert the state to proof that the petitioner had a history of committing sexual abuse. The evidence does not establish that the petitioner's trial counsel's performance was deficient. Nor does the evidence establish that the petitioner was prejudiced by counsel's failure to investigate his mental competence. Again, the only proof the petitioner presented in this regard was his own testimony. The petitioner even asserted that he was not certain how receiving a mental evaluation would have affected his decision to plead, but he just believed it should have been done. We cannot speculate as to what evidence further investigation would have yielded and whether it would have altered the outcome. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1999). The petitioner did not receive the ineffective assistance of counsel and is not entitled to post-conviction relief.

## CONCLUSION

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court denying post-conviction relief.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE